(Not for Publication) (Docket Entry Nos. 1, 9)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

_____
:
GARY PERRONE, :
:
        Plaintiff, : Civil No. 07-1367 (RBK)
:
    v. : **OPINION**
:
JO ANN BARNHART, :
COMMISSIONER OF SOCIAL :
SECURITY, :
:
        Defendant. :
_____ :

**KUGLER**, United States District Judge:

      This matter comes before the Court upon appeal by Plaintiff Gary Perrone ("Plaintiff"), pursuant to Title 42 U.S.C. § 405(g), for review of the decision of Defendant Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff has also filed a motion for summary judgment. For the reasons set forth below, Plaintiff's motion for summary judgment will be denied, the decision of the Commissioner will be reversed, and this case will be remanded to the Commissioner.

**I. BACKGROUND**

      Plaintiff alleges he is disabled with an onset date of June 14, 2003. He alleges that his disability arises from a back injury he sustained when he lifted a bag of grass clippings while

1

working as a trash truck driver.

### A. Medical Records

X-rays taken shortly after Plaintiff sustained his injury did not show any fracture or dislocation in the lumbar spine. (R. at 227.) In July 2003, Plaintiff reported experiencing increasing pain in his lower back and in his left leg. (R. at 226.) A July 2003 MRI revealed a disc herniation at L4-L5. (R. at 296.)

In July 2003, Dr. Theodore Conliffe, a treating physician, diagnosed Plaintiff with lumbar disc herniation, lower back pain, and probable lumbar radiculitis. (R. at 89.) Dr. Conliffe noted that Plaintiff had a limited range of motion in flexion and extension of his trunk, as well as a positive straight leg raise and a positive cross straight leg raise, both on the left side. (Id.) Dr. Conliffe indicated that Plaintiff would be temporarily unable to work, pending treatment. (R. at 95.) Plaintiff continued to receive regular examinations and treatment, including epidural injections. (R. at 96-116.)

In September 2003, an EMG revealed that Plaintiff had acute left L5 radiculopathy. (R. at 133.) Also in September 2003, Plaintiff saw Dr. Mark A. Testaiuti, a neurologist, who noted that Plaintiff's July 2003 MRI revealed degenerative disk disease at L2-3, 3-4 and 4-5 with a small central bulge at 2-3 and a broad-based disk bulge at L4-5. Dr. Testaiuiti found that Plaintiff had an acute lumbar sprain/strain injury and lumbar disk herniation at L4-5. Dr. Testaiuti concluded that a lumbar diskectomy would probably not improve Plaintiff's condition, and instead recommended continued physical therapy, selective nerve root blocks, and psychiatric counseling to help Plaintiff cope with his injury. (R. at 141-44.)

Dr. Alan Carr treated Plaintiff in October and November of 2003. (R. at 172-96.) On

October 10, 2003, Dr. Carr noted that Plaintiff showed some weakness in the left leg at 4/5 compared with the right leg at 5/5, and that Plaintiff's range of motion was limited.  (R. at 191.)  On November 25, 2003, Dr. Carr noted that Plaintiff's reflexes were 2/4.  (R. at 183.)   A November 2003 lumbar discography did not show any reproducible pain on injection at the L-2-L3, L3-L-4, L4-L5 or L5-S1 discs.  (R. at 166.)  In late 2003 and early 2004, Plaintiff went to the emergency room several times, complaining of intense back pain.  (R. at 197- 225; 240-50.)

In response to a Social Security questionnaire, Plaintiff's primary care physician, Dr. Daniel Abesh, stated in February 2004 that Plaintiff could lift and carry up to ten pounds, stand and/or walk up to two hours per day, sit less than six hours per day, and push and/or pull less than two hours per day.  (R. at 233-35.)

In June 2004, Dr. T.J. Citta-Pietrolungo performed a consultative examination of Plaintiff.  Dr. Citta-Pietrolungo reported that Plaintiff complained of lower and upper back pain, leg pain, inability to sit or stand for long periods of time, and difficulty sleeping.  Dr. Citta-Pietrolungo reported impressions of small L2-L3, L4-L5 herniated disc with mild spinal stenosis; history of lumbar strain and sprain; and L5 radiculopathy on the left.  Dr. Citta-Pietrolungo noted that Plaintiff had a full range of motion in his lower extremities.  He also noted that Plaintiff was functional, but avoided heavy lifting, carrying and bending.  Further, Plaintiff walked slowly and expressed great discomfort and strain when rising from a seated position.  (R. at 255-59.)

Dr. Armando A. Mendez, who saw Plaintiff in September 2004, noted that Plaintiff had a full range of motion of both hips, knees, and ankles, with no gross sensory or motor deficits.  He further observed that Plaintiff had 2+ reflexes of both knees and both ankles.  Dr. Mendez also noted that Plaintiff had severe complaints of pain at the extremes of straight leg raising in the

3

lower back with no radicular findings. (R. at 265.) Dr. Mendez noted that Plaintiff's complaints of pain "appear to be exaggerated with regard to the expected findings." (R. at 266.)

Dr. Kavita Gupta saw Plaintiff in 2004 and 2005. (R. at 276-93.) Dr. Gupta reported impressions of multilevel lumbar spondylosis, L4-L5 central disc protrusion, chronic opiate therapy, and clinical anxiety and depression disorder. (R. at 277.) He performed trigger point injections (R. at 288) and recommended continued use of prescribed pain medication (R. at 282). An October 2004 MRI showed that Plaintiff had mild congenital stenosis of the lumbar canal and spondylotic change including a small left central disc herniation at L2-L3 and a small central extruded disc at L4-5. (R. at 294.) A December 20, 2005 MRI showed a L4-L5 left lateral disc extrusion impinging on the left L5 nerve root with abutment of the exiting left L4 nerve root within the foramen, as well as degenerative disc disease at the L2-L3 and L3-L4 disc space levels with mild protrusion at the L2-L3 without canal stenosis or foraminal narrowing. (R. at 297-98.)

### B. Plaintiff's Testimony at the Administrative Hearing

Plaintiff testified that the last year of school he completed was the eleventh grade, and that he had worked as a trash truck driver and a delivery truck driver. (R. at 320, 325.) He stated that he had not worked since June 2003, but had received disability benefits in 2004. (R. at 320.) He used a walker when he was first injured, and then a cane, but stopped using the cane one and a half to two months before the hearing. (R. at 318; 337.) He had not had back surgery. (R. at 327.) He takes several prescription pain medications, and had taken Zoloft for depression in the past. (R. at 327, 333-34.) He recently obtained a prescription for a TENS device, but had not started using it at the time of the hearing. (R. at 331.)

Plaintiff testified that on a typical day, he dresses himself and takes care of his hygiene

needs, makes himself breakfast, and then he lies down and watches television or reads magazines.  (R. at 329.)  His wife and children do the household chores.  (R. at 337.)  He testified that he is able to walk for about a block, stand for twenty minutes, sit for ten to fifteen minutes, lift a gallon of milk, drive short distances, squat and climb stairs.  (R. at 330-32, 335.)  He testified that he cannot bend, and lies down to put on his socks.  (R. at 331.)  He said he has no arm problems or trouble breathing.  (R. at 332, 333.)

Plaintiff testified that he is in constant pain, but has good days and bad days.  (R. at 336.)  On a bad day, it takes him an hour and half to get out of bed.  (Id.)  He limps because of the pain.  (R. at 337.)  He also has burning, tingling, numbness and swelling in his left leg.  (R. at 332.)  He is most comfortable lying down.  (R. at 337.)

**C. Procedural History**

On January 27, 2004, Plaintiff filed applications for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income, alleging disability as of June 14, 2003, due to degenerative disc disease and chronic back pain.   Plaintiff's applications were denied initially and on reconsideration.  (R. at 28-33.)  On December 3, 2004, Plaintiff filed a written request for a hearing.  (R. at 34.)  This hearing was held on December 7, 2005 before Administrative Law Judge ("ALJ") Sherman S. Poland.

ALJ Poland issued an opinion on May 22, 2006 finding that Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to benefits.  (R. at 12-20.)   Plaintiff filed a request for review by the Appeals Council, which was denied on September 28, 2006, making ALJ Poland's decision the final decision of the Commissioner.  (R. at 5-7.)  On November 22, 2006, Plaintiff filed this action, seeking review of the Commissioner's

decision.  On August 6, 2008, the Court issued a notice of call for dismissal for lack of prosecution, which was withdrawn after Plaintiff filed an affidavit and the motion for summary judgment now before the Court.

## II. STANDARD OF REVIEW

District Court review of the Commissioner's final decision is limited to ascertaining whether the decision is supported by substantial evidence.  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  "Substantial evidence is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate.'"  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Evidence is not substantial "if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion," or if the Commissioner "ignores, or fails to resolve, a conflict created by countervailing evidence."  Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).  If the Commissioner's determination is supported by substantial evidence, the Court may not set aside the decision, even if the Court "would have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).

## III. DISCUSSION

### A. ALJ Poland's Decision

The Commissioner conducts a five-step inquiry to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  In the first step, the Commissioner evaluates whether the claimant is currently engaging in a "substantial gainful activity."  Such activity bars the receipt of benefits.  20 C.F.R. § 404.1520(a)(4)(i).  In step two, the Commissioner ascertains whether the claimant is suffering from a severe

impairment, meaning "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  If the Commissioner finds that the claimant's condition is severe, the Commissioner proceeds to step three, and determines whether the condition meets or equals a listed impairment.  20 C.F.R. § 404.1520(a)(4)(iii).  If the condition is equivalent to a listed impairment, the claimant is entitled to benefits; if not, the Commissioner continues to step four to evaluate the claimant's residual functional capacity ("RFC") and analyze whether the RFC would enable the claimant to return to her "past relevant work."  20 C.F.R. § 404.1520(e).  The ability to return to past relevant work precludes a finding of disability.  20 C.F.R. § 404.1520(f).  If the Commissioner finds the claimant unable to resume past relevant work, the burden shifts to the Commissioner to show that the claimant can perform work available "in significant numbers in the national economy."  Jones, 364 F.3d at 503.

Applying this five-step approach, ALJ Poland first found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability on June 14, 2003.  (R. at 13.)  In step two, ALJ Poland found that Plaintiff had severe lumbar degenerative disc disease associated with left lower extremity radiculopathy.  (Id.)  However, ALJ Poland found that this impairment did not meet or equal the criteria of any listed impairment and specifically did not meet the requirements of Listing 1.04, relating to disorders of the spine.  (R. at 14.)

ALJ Poland next found that Plaintiff had the residual functional capacity for a restricted range of sedentary work activity.  In particular, ALJ Poland found that Plaintiff was able to lift and/or carry ten pounds occasionally; stand and/or walk for a total of two hours and sit for a total of six hours in an eight-hour workday; and perform postural activities occasionally.   ALJ Poland

noted that Plaintiff must be able to alternate between sitting and standing and must avoid more than minimal exposure to hazards such as moving machinery or unprotected heights. Further, ALJ Poland found that Plaintiff's ability to maintain concentration, persistence or pace was moderately limited by his pain and that Plaintiff could perform only simple, routine tasks. Based on Plaintiff's RFC and the testimony of a vocational expert, ALJ Poland concluded that Plaintiff was unable to return to his past relevant work as a truck driver or garbage collector/driver, which is classified as semiskilled and exertionally medium. (R. at 17.) However, ALJ Poland found that there was a significant number of jobs in the regional and national economies that Plaintiff could perform. (R at 18.)

      In his motion for summary judgment, Plaintiff argues that ALJ Poland's decision was not supported by substantial evidence. First, Plaintiff argues that the evidence does not support ALJ Poland's finding that Plaintiff's impairment did not meet the criteria of listing 1.04. Second, Plaintiff argues that in evaluating Plaintiff's RFC and finding that Plaintiff was able to perform a significant number of jobs in the regional and national economy, ALJ Poland did not fully consider the medical evidence, credit Plaintiff's testimony regarding his pain and inability to work, or consider the side effects of Plaintiff's medication. The Court finds that some of Plaintiff's arguments have merit, but that remand to the Commissioner, rather than summary judgment for the Plaintiff, is the appropriate action.

**B. Whether Plaintiff's Impairment Met or Equaled Listing 1.04**

Plaintiff first argues that the ALJ's determination that he did not meet or equal Listing 1.04 was not supported by substantial evidence. In order to meet or equal listing 1.04A[1], a claimant must show:

> compromise of a nerve root (including the cauda equina) or the spinal cord. With: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. The claimant must show that his impairment "meet[s] *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Based on the MRI showing nerve root impingement, the ALJ found that Plaintiff's L4-L5 disc herniation satisfied the threshold criterion of listing 1.04. However, the ALJ found that the three requirements of 1.04A had not been met. (R. at 14.) The ALJ cited the September 2004 report in which Dr. Mendez noted that Plaintiff had "a full range of motion of both hips, knees and ankles with no gross sensory or motor deficits" and had "2+ reflexes of both knees and both ankles." (R. at 265.) Dr. Mendez also noted a lack of clinical evidence of radiculopathy or radiculitis, and suggested that Plaintiff's complaints were exaggerated. (R. at 266.) The ALJ also cited Dr. Citta-Pietrolungo's June 4, 2004 findings, which he described as "similar" to those

---

[1] In his brief, Plaintiff cites evidence of reflex loss, weakness in the left leg, and a limited range of motion. These indicators are all listed in § 1.04A. Plaintiff does not argue that he suffers from spinal arachnoiditis, as required under § 1.04B, or from an inability to ambulate effectively, as required by § 1.04C. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Therefore, the Court will address only Listing 1.04A.

9

of Dr. Mendez. (R. at 14.)[2]

Plaintiff argues that there is evidence that he had a limited range of motion (R. at 93, 191), reflexes of 2/4 (R. at 183)[3], weakness in the left leg (R. at 191), and positive leg raising tests (R. at 93). In addition, the report of Dr. Citta-Pietrolungo cited by the ALJ indicates that Plaintiff had muscle weakness in his left leg. (R. at 259.)

In sum, there is inconsistent evidence with respect to whether Plaintiff met the requirements of 1.04A. In determining whether Plaintiff met the requirements of 1.04A, the ALJ did not acknowledge that there was conflicting evidence or explain why he chose to rely on the reports of Dr. Mendez and Dr. Citta-Pietrolungo in particular. Because the ALJ did not explain his reasons for rejecting evidence that indicated Plaintiff met the requirements of 1.04A, this case will be remanded to the Commissioner. See Burnett v. Comm'r, 220 F.3d 112, 121 (3d Cir. 2000) ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.").

---

[2] In her brief in opposition to Plaintiff's motion for summary judgment, the Commissioner cites additional evidence that Plaintiff did not meet the requirements of listing 1.04A. However, this Court cannot affirm the ALJ's decision on the basis of evidence that he did not cite in his opinion. See Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962) ("The courts may not accept appellate counsel's post hoc rationalizations for agency action."); Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (declining to rely on evidence cited by Social Security Commissioner on appeal when this evidence had not been cited by ALJ).

[3] The Commissioner argues that only asymmetry indicates reflex deficits. In support of this argument, the Commissioner cites The Merck Manual of Diagnosis and Therapy, which explains that when testing reflexes, "[a]ny asymmetric increase or depression is noted." The Merck Manual of Diagnosis and Therapy 1752 (18th ed. 2006). However, the Commissioner, the ALJ, and the Merck Manual do not explain the significance, if any, of a reflex measurement of 2/4.

### C. Residual Functional Capacity

Plaintiff first argues that in assessing his residual functional capacity, the ALJ did not properly consider the medical records, specifically the records of Drs. Abesh, Conliffe and Carr and the records of his MRIs and EMG. "In making a residual functional capacity determination, the ALJ must consider all evidence before him" and "must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." Burnett, 220 F.3d at 121. Further, while the final responsibility for determining a claimant's RFC rests with the Commissioner, 20 C.F.R. § 404.1527(e)(2), an ALJ may reject the opinion of a treating physician "only on the basis of contradictory medical evidence." Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988).

Here, the ALJ thoroughly reviewed Plaintiff's medical records, including the records from Drs. Abesh, Conliffe and Carr, and the records of Plaintiff's MRIs and EMG. (R. at 15-17.) However, the Court finds that the ALJ did not adequately explain his rejection of Dr. Abesh's conclusions with regard to Plaintiff's inability to sit, stand or walk for a total of eight hours per day. The ALJ agreed with Dr. Abesh's opinion that Plaintiff could occasionally lift or carry up to ten pounds and could stand or walk for two hours per day. He disagreed with Dr. Abesh only with respect to how long Plaintiff could sit in an eight-hour workday. (R. at 17, 234.)

In rejecting Dr. Abesh's conclusion that Plaintiff could not sit, stand and/or walk for a total of eight hours per day, the ALJ cited the reports of Drs. Mendez and Citta-Pietrolungo. (R. at 17.) Dr. Mendez stated that Plaintiff's complaints of pain were exaggerated and noted a "lack of objective physical findings." (R. at 266.) Dr. Citta-Pietrolungo described Plaintiff as "functional," but noted that Plaintiff avoided heavy lifting, carrying and bending. (R. at 257.)

However, neither Dr. Mendez nor Dr. Citta-Pietrolungo expressed any opinion as to how long Plaintiff could sit. The ALJ does not explain how their reports relate to Plaintiff's ability to sit for six hours a day. Nor does the ALJ explain why he accepted Dr. Abesh's conclusions with regard to Plaintiff's ability to lift, carry, stand and walk, but not with respect to Plaintiff's ability to sit. Therefore, the Court cannot determine whether the ALJ properly rejected the opinion of Dr. Abesh. On remand, the ALJ should further explain his reasons for rejecting Dr. Abesh's opinion.

Plaintiff also argues that the ALJ did not properly consider his testimony regarding his pain and inability to work. "An ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993). "[W]here a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence." Green v. Schweiker, 749 F.2d 1066, 1068 (3d Cir. 1984). "Furthermore, when the claimant has worked for a long period of time, his testimony about his work capabilities should be accorded substantial credibility." Taybron v. Harris, 667 F.2d 412, 415 n.6 (3d Cir. 1981). However, when the ALJ weighs the claimant's testimony against other evidence in the record, the court "must defer to the factfinder on issues of credibility." Alvarez v. Sec'y of Health and Human Servs., 549 F. Supp. 897, 900 (E.D. Pa. 1982). Here, the Court need not decide whether the ALJ's credibility determination was supported by substantial evidence because this case is already being remanded on other grounds which could affect the credibility analysis.

Finally, Plaintiff argues that the ALJ did not consider the side effects of Plaintiff's

medication. An ALJ must consider a claimant's testimony about the side effects of medication, and, if the ALJ rejects the testimony, he must explain his reasons for doing so. Stewart v. Sec'y of Health, Educ. and Welfare, 714 F.2d 287, 290 (3d Cir.1983). However, Plaintiff did not testify that he suffered from any side effects. The only mention of any side effects was by Plaintiff's lawyer. Further, Plaintiff does not point to any evidence in the record that shows he suffered from side effects from his medication. Therefore, the ALJ did not err in not addressing the side effects of Plaintiff's medication.

## IV. Conclusion

Because of the need for further explanation of the resolution of conflicting evidence in the record, Plaintiff's motion for summary judgment is denied, the decision of the Commissioner is reversed, and this case is remanded to the Commissioner for further proceedings consistent with this Opinion. See Reefer v. Barnhart, 326 F.3d 376, 381-82 (3d Cir. 2003) (explaining that remand is appropriate where there is need for ALJ to explain why he relied certain evidence and rejected other evidence); Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984) (noting that court should order award of benefits "only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits"). An accompanying order shall issue today.


Dated: 3-16-09                             /s/ Robert B. Kugler
                                           ROBERT B. KUGLER
                                           United States District Judge

13

14